# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-3090

JUN LIN and YU LIN,

*Petitioners*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A073-569-293 and No. A098-569-559

ARGUED MAY 27, 2010—DECIDED SEPTEMBER 1, 2010

Before BAUER, WOOD and TINDER, *Circuit Judges*.

BAUER, *Circuit Judge.* Petitioners Jun Lin and Yu Lin appeal the decision of the Board of Immigration Appeals ("Board"), which affirmed the decision of the immigration judge ("IJ"), that petitioners were not entitled to asylum or withholding of removal and are eligible to be deported. The Lins argue that the IJ and the Board erred by rejecting their claim that, because they

have two children born in the United States, they have a reasonable fear of persecution if they are returned to Fujian province in the People's Republic of China.

## I. BACKGROUND

In 1992, while living in Fujian province, China, petitioner Jun Lin conceived a child with his girlfriend (not his current wife), though they were both too young to obtain birth or marriage permits under Chinese law. Because it violated family planning laws, officials forced the girlfriend to abort the pregnancy. Lin then came to the United States in 1994, without proper documentation. He filed for asylum soon after arriving, but after failing to appear at an immigration hearing in 1996, he was ordered deported. In 2006, the immigration court granted Mr. Lin's motion to reopen his asylum proceeding.

Yu Lin entered the United States in 1998 without appropriate documents. Though she and Jun Lin were born in the same town in China, they did not meet until she arrived in the United States. They married in 1999 and moved to Sturgeon Bay, Wisconsin. The couple have two children born in the United States, one in 2002 and the other in 2005. Mrs. Lin filed her application for asylum in August 2006. Both the Lins' asylum applications asserted a fear of being sterilized for having two children born outside China, in violation of the nation's family planning policies. The immigration court consolidated their cases.

At the couple's removal proceeding, both Mr. and Mrs. Lin stated that officials in Fujian province will

"definitely"sterilize them if they are deported. The Lins also submitted a letter from Shu Yun Xu, Mr. Lin's cousin, stating that she had been forcibly sterilized after having a second child in 1996.

The United States submitted a copy of a 2007 State Department profile of conditions in China, which said that enforcement of family planning laws was at most "uneven." While the profile acknowledged reports by asylum seekers from Fujian province of coercive family planning practices, officials "found no evidence of forced abortion," and physicians in contact with the U.S. Consulate General "have not seen signs of forced abortions or sterilizations."

The IJ denied the Lins' asylum applications, finding that they were unable to meet their burden of proving that having two U.S.-born children created a well-founded fear of persecution by family planning officials upon their return to China. That his former girlfriend had been compelled to have an abortion was insufficient to establish that Mr. Lin had experienced past persecution in China. And while the IJ believed that the Lins do fear persecution, he found that they failed to present evidence tending to show that this fear was objectively reasonable. The IJ found the letter from Mr. Lin's cousin inadequate in this regard because she was not similarly situated to the Lins; the cousin did not indicate where the procedure took place and, unlike the Lins, neither of her two children were born outside China. Moreover, the 2007 State Department profile indicated that enforcement of family planning laws has diminished since 1996.

The Board adopted and supplemented the IJ's decision. In addition to agreeing that the Lins had not carried their burden of establishing a well-founded fear of persecution, the Board cited the State Department profile as indicating that "children born abroad were not counted" for birth planning purposes, that officials were unaware of an official policy of sterilization, that enforcement is described as "lax and uneven," and that "evidence suggests that physical coercion is . . . uncommon." The Board held that the Lins also failed to satisfy the higher burden of proof required to establish their eligibility for withholding of removal.

## II. DISCUSSION

The Lins timely appeal the decision of the Board and the IJ. They argue that their testimony, the letter from Mr. Lin's cousin, and affidavits from human rights organizations were sufficient to establish that their fear of sterilization was objectively reasonable. They also claim that, in considering whether their U.S.-born children would be counted for family planning purposes, the Board erred by taking administrative notice of the 2007 State Department report.

Since the Board affirmed and supplemented the IJ's decision, we review "both the immigration judge's decision and any additional reasoning" of the Board. *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2009). We review deferentially the decision to deny the Lins' asylum application and ask only whether it is supported by "reasonable, substantial, and probative evidence on

the record considered as a whole." *Toptchev v I.N.S.*, 295 F.3d 714, 720 (7th Cir. 2002) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

The Board held that the Lins had not established that they are "refugees" within the meaning of 18 U.S.C. § 1101(a)(42), which would make them eligible for asylum. *See Boci v. Gonzales*, 473 F.3d 762, 767 (7th Cir. 2007); *Zhu v. Gonzales*, 465 F.3d 316, 318 (7th Cir. 2006). To prevail, they had to show either that they had been persecuted in China in the past, or that they have a well-founded fear that if they return to China they will be persecuted on account of their political opinion—their opposition to, and failure to comply with family planning policies. *Zhu*, 465 F.3d at 318.

The IJ determined that the fact that Mr. Lin's girl-friend had an unwanted abortion was inadequate to establish past persecution. The Lins do not challenge this finding; rightfully so as we "have declined to expand the definition of "refugee" to include the boy-friends of women who are forced to abort a pregnancy." *Id*. at 321 (citing *Chen v. Gonzales*, 457 F.3d 670 (7th Cir. 2006)).

The Lins do take issue with the finding that they do not have a well-founded fear of future persecution if they return to China. Proving this requires the Lins to establish that they genuinely fear persecution and that the fear is objectively reasonable. *See Toptchev,* 295 F.3d at 720. While the Board found the Lins credible about their own fears, it was not convinced that their fears were objectively reasonable.

We find that the IJ's conclusion, as supplemented by the Board, to be supported by substantial evidence. Absent a showing of past persecution, which raises a presumption that the applicant will be persecuted in the future, the Lins had to present "specific, detailed facts showing a good reason to fear that [they] will be singled out for persecution" once returned to China. *Zhu*, 465 F.3d at 321 (quoting *Borca v. I.N.S.*, 77 F.3d 210, 214 (7th Cir. 1996)). Mr. Lin's testimony that he fears sterilization was based entirely on his girlfriend's unwanted 1992 abortion which, as we said, is insufficient to trigger a presumption of future persecution. The only other fact the Lins presented was that Mr. Lin's cousin underwent an unwanted sterilization procedure in 1996 after the birth of her second child. But, unlike the Lins, the cousin's children were born in China. Her letter was of little value in establishing what would happen to parents with children born outside China. Mrs. Lin testified that her fear of persecution was entirely premised upon the letter and conversations with her mother-in-law. While the Lins also presented several documents and an affidavit that suggested the possibility of coercive sterilization, we cannot disagree with the Board's determination that the items were unreliable because they were not based on personal knowledge. *See Matter of J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007); *Matter of C-C-*, 23 I. & N. Dec. 899 (BIA 2006). *See also Wang*, 505 F.3d at 622-23. Without specific facts to support their claim of a well-founded fear of persecution, the Lins failed to meet their burden and the IJ's denial of their asylum application was reasonable.

The Lins focus much of their argument in attacking the Board's decision to take administrative notice of the 2007 State Department report, *see* 8 C.F.R. § 1003.1(d)(3)(iv), which concludes that overall enforcement of family planning policies in Fujian province is uneven, and that the Lins' two U.S.-born children will not be counted against them. *Galina v. Mukasey*, 213 F.3d 955 (7th Cir. 2000), they argue, prohibits the Board from taking administrative notice of statements in a country profile unless the statements "cannot seriously be contested." *Id.* at 958. Indeed, we have warned that because the State Department's "natural inclination is to look on the bright side" with regard to friendly nations, immigration authorities should treat its reports with a "healthy skepticism, rather than as a holy writ." *Galina*, 213 F.3d at 958-59. But the Board did not simply rely on the report for general country conditions. Instead, it maintained the "individualized nature of the inquiry," *Sankoh v. Mukasey*, 539 F.3d 456, 466 (7th Cir. 2008), by focusing only on the portions of the report relevant to the Lins' situation such as Chinese birth-planning policy for children born abroad and enforcement practices in Fujian province.

The Lins further argue that State Department reports are insufficient to rebut a claim of a well-founded fear of persecution. *See id.*; *see also Ayele v. Holder*, 564 F.3d 862, 871 (7th Cir. 2009); *Bace v. Ashcroft*, 352 F.3d 1133, 1141 (7th Cir. 2003). Indeed, we have found that the shortcomings of State Department reports are "especially germane" in situations in which the burden of persuasion has shifted to the government. *See Galina*, 213 F.3d at 959. But the burden of persuasion in this case was not on the gov-

ernment. An alien must first establish that he or she has been the victim of past persecution before a presumption arises that the alien has a well-founded fear of future persecution. *Zhu*, 465 F.3d at 321. The government may rebut this presumption by showing that the fear is not objectively reasonable. But the burden never shifted in this case because the Lins established neither past persecution, nor that their subjective fears of sterilization were objectively reasonable. As discussed above, though the IJ and the Board found the Lins credible with respect to their reasons for leaving China, they presented no "specific, detailed facts," *see id.*, that they are likely to be sterilized upon their return. The Lins have not met their burden of showing that their fear of future persecution in China is objectively reasonable.

## III. CONCLUSION

For the foregoing reasons, the petition to review is denied.